NOT FOR PUBLICATION (Docket No. 36)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                   :
KATHLEEN DECREE,                   :
                                   :    Civil No. 07-3674 (RBK/AMD)
         Plaintiff,                :
                                   :
      v.                           :
                                   :    **OPINION**
UNITED PARCEL SERVICE, INC., et al.,:
                                   :
         Defendants.               :
_____:

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Defendant United Parcel Service ("UPS") for reconsideration of the Court's Opinion and Order dated September 18, 2009 denying UPS summary judgment on Plaintiff Kathleen Decree's ("Decree") New Jersey Law Against Discrimination (LAD), N.J. Stat. Ann. § 10:5-1, et seq. claim for failure to make reasonable accommodations. For the reasons expressed below, UPS's motion will be denied.

**I.    BACKGROUND**

   **A.    Decree's Work for UPS**

Decree began working for UPS as a package driver in 1987. She steadily rose through the employment ranks, holding such positions as Supervisor Human Resources/Acting Manager, On-Car Supervisor, Preload Supervisor, Saturday Air Supervisor, International Supervisor, Vineland Business Manager, United Way Loan Executive to Southeastern United Way, and Midnight Manager of Philadelphia Air Hub. Most recently, from 2000 to 2007, Decree held the position of

1

Business Manager of the Marlton Center, located within the Lawnside Division.

Decree's responsibilities as Business Manager of the Marlton Center included delegating responsibilities and assignments to subordinates, attending labor meetings, and supervising subordinates' training, safety, and occupational development.  The physical aspects of her position included (1) the simple hand grasping, manipulation, and reaching associated with office tasks; (2) the lifting, lowering, pushing, and pulling associated with package handling; and (3) traveling by car to attend meetings, conduct customer visits, meet distressed package drivers, and follow drivers to audit compliance with training.  Plaintiff's workload predictably increased by several orders of magnitude twice a year during the peak seasons of Christmas and Summer.

The parties dispute the centrality of the physical aspects of Plaintiff's job.  UPS maintains a document that describes the "essential job functions" of an Operations Supervisor/Manager to include: "travel by car and plane to attend meetings at other locations and call on non-UPS locations and customers," as well as "[l]ift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "[a]ssist in moving packages weighing up to 150 pounds."  (Def.'s Br. at Ex. 5.)  The description notes that:

> The essential function of this job may vary greatly depending upon the size and the location of the UPS facility.  At some locations, employees may not perform all of the essential job functions listed above.  At other locations, employees may perform some or all of the functions listed above, and in addition, may be required to perform other jobs or tasks as directed.

(Id.)  On the other hand, Decree contends that, in actuality, she only occasionally handled packages, and then, only when necessary to assist the supervisors and other UPS employees who were primarily responsible for doing so.  Decree admits that her job required her to frequently travel by car – sometimes as far as three hundred miles a day – but disputes the frequency with

which she was required to travel long distances and indicates that driving responsibilities were often divided amongst the various managers utilizing a car-pooling system.

    **B.**  **Decree is Injured in an Automobile Accident**

  On December 9, 2005, Decree drove to Leisuretown, New Jersey to assist a UPS part-time supervisor who was struggling with her job performance. On her return trip, she was involved in an automobile accident and sustained physical injuries. Shortly after the accident, Decree informed her immediate supervisor, Al Carlino, who allegedly instructed her to file for benefits under her personal liability insurance. Decree did not immediately file for workers' compensation. She attributes this failure to her belief that a manager should not ordinarily file for workers' compensation and the pride she took in the Marlton Center's record of workplace safety. Decree continued to work at UPS until January 18, 2006**,** during which time she wore her arm in sling.

  On January 18, 2006, Decree filed for and received workers' compensation benefits, which were administered by UPS's workers' compensation administrator, Liberty Mutual. As a consequence of filing for workers' compensation, Decree ceased reporting for work. Decree alleges that this prompted Mr. Carlino to angrily inform her that "nobody is going out on worker's comp on my time," and that if she did not report to work the following morning he would come to her home and "drag" her back. (Dep. of Decree at 179:4-5.) Apparently, Mr. Carlino called Plaintiff again later that evening to rescind his threats and to inform her that she would be temporarily replaced, but that the position would be held open for her upon her return.

    **C.**  **Decree's Leave of Absence**

  Throughout the duration of Plaintiff's time on workers' compensation, her medical

progress was tracked by Liberty Mutual. From time to time, Liberty Mutual would make condensed information regarding Plaintiff's progress available to UPS through an online computer program known as Risk Track. Through Risk Track, UPS's case manager John S. Jordan accessed and reviewed these records. Amongst other things, these records reflect scheduled physician appointments, diagnoses, and projected return dates. Decree's physicians diagnosed her with a full thickness chest tear and brachial plexus irritation. To properly treat her conditions, her physicians delayed shoulder surgery until November 2006.

UPS provides its employees with a Flexible Benefits Plan ("FBP"). The FBP includes income protection coverage of short-term and long-term disability, as well as a return-to-work program. Pursuant to the FBP, any employee who remains on a leave of absence for longer than twelve months is administratively terminated. On December 1, 2006 – as Decree neared the end of the twelve month period – UPS sent her a letter alerting her that UPS had "received notification that you requested a job-related accommodation because of a self-reported physical or mental condition." (Def.'s Br. at Ex. 13.) UPS enclosed forms to be completed by Plaintiff's physician which would enable UPS to assess the possibility of an accommodation. UPS's letter warned that speed was of the essence and that a failure to return the forms within four weeks would be regarded as a withdrawn request. Plaintiff did not send any medical information to UPS pursuant to this request and wrote on the form: "I did not request this!!" (Id.)

On December 17, 2006, Plaintiff's physician, Dr. Barbara G. Frieman, determined that Plaintiff could return to work on light duty starting January 3, 2007. Dr. Frieman prepared a physician's release for Decree, which read "Kathy can go back to work on January 8th 2007 to Light Duty – limit Lifting, pushing + pulling with Rt. Arm. No Repetitive Reaching and Local

4

Driving only" (the "Release"). The Release did not define "local driving," but Plaintiff testified that her understanding was that local driving meant a distance of roughly twenty miles.

On December 29, 2006, UPS sent another letter to Decree, reiterating its need for medical information to analyze the possibility of accommodations. Nevertheless, Plaintiff did not comply because, as she explained, "I didn't believe myself to be disabled and I wasn't going to be permanently disabled that I could not perform my job." (Dep. of Pl. at 212:9-14.)

    **D.**    **Decree Attempts to Return to the Job**

Upon receipt of the Release, Decree contacted District Nurse Betsy Sullivan to inform her of Decree's desire to return to work. On December 22, 2006, Plaintiff visited the Marlton Center, showed the Release to the new district supervisor, Todd Richards, and informed him that she would be returning to work on January 8, 2007. Mr. Richards responded that he would have to confer with his superiors. On January 3, 2007, Decree called Nurse Sullivan and faxed her the Release. According to Plaintiff, Nurse Sullivan informed her that she could not return to work until she was 100% healed and had spoken to District Human Resources Manager, David Jewell.

Decree spoke with Mr. Jewell several times in the days that followed. In an initial conversation, Mr. Jewell asked Decree to explain the Release, to which Decree responded that she experienced frequent dizziness and was uncomfortable on major highways. Mr. Jewell noted that the limitations on her Release would make performing her job difficult. Plaintiff countered that managers do not perform heavy lifting and that her condition would improve over a short period of time. Plaintiff alerted Mr. Jewell that she was willing to return to any managerial position available. Mr. Jewell indicated that he would speak to Mr. Joe Ellis to ascertain if there was a managerial opening in the industrial engineering department.

On January 17, 2007, Decree again spoke to Mr. Jewell. This time he informed her that he had not spoken to Mr. Ellis, that there were no positions available for Ms. Decree, and that there was nothing he could do to help. UPS terminated Plaintiff the following day upon the expiration of the twelve month leave of absence period.

## II.    STANDARD

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure. United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), or as a motion for relief from judgment or order under Fed. R. Civ. P. 60(b). Id. In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration.

Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the motion. L. Civ. R. 7.1(i); see NL Indus., Inc. v. Commercial Union Ins., 935 F. Supp. 513, 515 (D.N.J. 1996). The standard for reargument is high and reconsideration is to be granted only sparingly. See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994). The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. Compaction Sys.

Corp., 88 F. Supp. 2d at 345; see also L. Civ. R. 7.1(i).  "The word 'overlooked' is the operative term in the Rule."  Bowers v. Nat'l Collegiate Athletic Ass'n, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citation omitted); see also Compaction Sys. Corp., 88 F. Supp. 2d at 345.

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue.  See, e.g., SPIRG v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989). Thus, reconsideration is not to be used as a means of arguing what "could have been, but was not, argued in the original set of moving and responsive papers." Bowers, 130 F. Supp. 2d at 613; see Resorts Int'l. v. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 & n. 3 (D.N.J. 1992); Egloff v. New Jersey Air National Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988).  Local Civil Rule 7.1(i) does not allow parties to restate arguments which the court has already considered. See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990).  Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process.  Bowers, 130 F. Supp. 2d at 612 (citations omitted).  In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

### III.   DISCUSSION

UPS argues that the Court overlooked its argument that Plaintiff cannot prove her failure to accommodate claim at trial because "Plaintiff cannot point to any evidence that UPS had an open position at the time of her administrative termination that met the limitations Plaintiff conveyed to UPS."  (UPS's Br. in Support of Mot. for Reconsideration at 2.)  UPS also argues

that the Court "overlooked the undisputed record that Plaintiff's medical restrictions and physical condition in January 2007 impeded her ability to perform some of the essential job functions of Operations Manager." (Id. at 12.)  Plaintiff counters that Decree is not required to identify a specific position into which UPS could have placed her and that UPS's argument in regard to Plaintiff's physical ability to perform the essential functions of her previous position is simply a "rehash of that which has been decided." (Pl.'s Opp. Br. at 5, 8.)  The Court does not believe reconsideration is appropriate and will address each of UPS's arguments in turn.

### A. No Open Position

UPS argues that the Court overlooked its argument that Plaintiff's failure to accommodate claim must fail because Plaintiff cannot establish that an open position existed. (UPS's Br. in Support of Mot. for Reconsideration at 2.)  UPS did not, however, make this argument in support of its summary judgment motion on Plaintiff's failure to accommodate claim.  To the contrary, UPS argued that Plaintiff's failure to accommodate claim must fail because (1) UPS did not know of Decree's disability; (2) Decree did not request accommodation; (3) UPS made good faith efforts to engage Decree in the interactive process; and (4) Decree could not show that she could have been reasonably accommodated but for UPS's lack of good faith.  (UPS's Br. in Support of Mot. for Summary Judgment at 7-8.)

With respect to the fourth prong of its argument, UPS argued that Decree could not show the possibility of reasonable accommodation because Decree could not show that she was "permanently incapable of performing all of the essential job functions of her former position." (Id. at 8.)  To support this argument, UPS observed that Decree's medical release restricted her from lifting objects of a certain weight and from driving non-locally.  Decree responded by

arguing that lifting heavy weights and driving non-locally were not essential to the duties of a manager. In its discussion of Plaintiff's failure to accommodate claim, UPS's reply brief focused exclusively on the question of whether Plaintiff could prove her physical ability to perform essential job functions. (UPS's Reply Br. at 7-9.)

The Court addressed these arguments in a subsection of its Opinion entitled "Possibility for Reasonable Accommodation." Decree v. United Parcel Serv., Inc., No. 07-3674, 2009 WL 3055382, at *11-*13 (D.N.J. Sept. 18, 2009). The Court concluded that the question of whether Decree could perform the duties of a UPS manager was properly for the jury. The Court did not address the issue of whether Plaintiff could point to an open position because UPS did not rely on this argument to support its motion for summary judgment with respect to Plaintiff's failure to accommodate claim. In other words, the Court did not overlook this argument because UPS did not make it.

UPS disagrees, contending that it made the failure to point to an open position argument in section II.B.2. of its moving brief. (UPS's Br. in Support of Mot. for Reconsideration at 2.) In that section, UPS does arguably discuss Plaintiff's alleged failure to point to an open position. This section of the summary judgment brief, however, did not address UPS's request for summary judgment on Plaintiff's failure to accommodate claim. Rather, this section addressed UPS's request for summary judgment on Plaintiff's regarded as disability discrimination claim. In this section, UPS argued:

> Plaintiff cannot point to any evidence that UPS had an open position at the time of her administrative termination that met the limitations Plaintiff conveyed to UPS. To the contrary, the record is undisputed that at the time of Plaintiff's administrative termination there were no open manager or supervisor positions available at Plaintiff's former UPS facility, or at any location where Plaintiff

9

>claims she could have worked in January 2007. Moreover, Plaintiff admitted that she did not know of any open positions at UPS on or after January 8, 2007 that she could have performed.

(UPS's Mot. for Summary Judgment at 20-21) (internal citations omitted). The Court granted UPS's motion for summary judgment with respect to Plaintiff's regarded as discrimination claim on other grounds, and thus did not have occasion to discuss UPS's no open position argument. Even if the Court had reached this argument, however, it would not have altered the Court's disposition as the Court did not, and does not, read this passage as referring to Plaintiff's failure to accommodate claim.

Moreover, it is not entirely clear to the Court that the aforementioned language does, in fact, articulate the argument that Decree's regarded as claim should fail because of her alleged inability to point to an <u>open</u> position. Read in context, the above passage appears to be arguing that Decree's regarded as claim should fail because Decree could not point to an open position that Decree <u>could actually perform</u>. This focus on the issue of Decree's limitations is not only consistent with the overall tenor of the parties' arguments at the summary judgment stage, but also with UPS's legal citations. For example, in its brief supporting the instant motion, UPS relies primarily on <u>Donahue v. Consolidated Rail Corp.</u> for the proposition that a plaintiff in a failure to transfer case must be able to identify a vacant, funded position into which they could have been transferred. 224 F.3d 226, 234 (3d Cir. 2000). UPS did not cite <u>Donahue</u> in its summary judgment papers.

Nonetheless, UPS is correct that to succeed on a failure to accommodate claim, the plaintiff bears the burden of demonstrating that a reasonable accommodation is in fact possible. <u>See, e.g.</u>, <u>Sinclair v. Domb Lighting and Elec. Supply Co.</u>, 2009 WL 1118813, at *7 (N.J. Super.

10

Ct. App. Div. 2009) (per curiam) (unpublished opinion) (citing Donahue v. Consolidated Rail Corp., 224 F.3d 226, 232-35 (3d Cir. 2000); Victor v. State, 952 A.2d 493 (N.J. Super. Ct. App. Div. 2008)); Castellani v. Bucks County Municipality, No. 07-1198, 2008 WL 3984064, at *9 (E.D. Pa. 2008) (quoting Donahue, 224 F.3d at 230). Plaintiff's argument to the contrary mistakes an employer's duty to reasonably accommodate an employee's request with the subsequent burdens of proof in litigation. See Sinclair, 2009 WL 1118813, at *7. An employee requesting reasonable accommodation from his or her employer does not need to state the specific accommodation he or she is seeking. Id. (citing Tynam v. Vicinage 13, 798 A.2d 648 (N.J. Super. Ct. App. Div. 2002); Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246-48 (3d Cir. 2006)). At this point, the employer is in an eminently better position to know what accommodations are reasonable and possible. Id. (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 316 (3d Cir. 1999); Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)). After a lawsuit has been filed, however, the burden shifts to the plaintiff to make his or her case. Id. at *7-8. At this latter point in time, requiring a plaintiff-employee to point to specific reasonable accommodations is not unfair because the employee has the benefit of discovery and the assistance of counsel. Id. at *7. Thus, if Decree cannot point to evidence establishing the existence of a reasonable accommodation for her at UPS, a trial in this matter is unnecessary.

  Decree's primary theory of reasonable accommodation is that UPS should have reinstated her to her previous position as Operations or Business Manager at the Marlton Center. UPS argues that such a reinstatement was not reasonable because it had permanently replaced Decree with Ms. Fender shortly after UPS learned that Decree would be out of work for more than a month and a half. (See Dep. of David Jewell at 24-25.) Decree argues that reinstatement was a

11

reasonable option by offering to prove that UPS only made Ms. Fender's occupation of Decree's old position permanent when UPS decided to terminate Ms. Decree after the breakdown of the interactive process. To support this position, Decree points to assurances given to her by Mr. Carlino in May of 2006 that she would be returning to her old position, (see Dep. of Kathleen Decree at 223), Ms. Fender's apparent belief expressed to Decree and Todd Richards in December of 2006 that UPS intended to move her to industrial engineering as soon as Decree returned, (see id. at 222), and UPS's apparent lack of physical documentation of Ms. Fender's permanent assignment, (see Dep. of David Jewell at 24-25). If believed, Plaintiff's evidence supports the conclusion that UPS could have reasonably accommodated her simply by sticking to its alleged original plan to reinstate Decree to her former position upon her return and move Ms. Fender to industrial engineering. Thus, the Court is satisfied that the issue of whether UPS could have reasonably accommodated Decree remains genuinely disputed.

      B.    **Could Not Perform Essential Functions**

UPS argues that the Court overlooked certain undisputed facts in concluding that there existed a genuine dispute on the question of whether Decree could perform the essential functions of an Operations or Business Manager at the Marlton Center. (UPS's Br. in Support of Mot. for Reconsideration at 13.)

In support of its summary judgment motion, UPS argued that Decree could not perform the essential functions of an Operations Manager because of her lifting and driving restrictions. UPS pointed to post-termination records from Decree's health care providers, a UPS document purporting to establish the essential requirements of the UPS manager/supervisor position, and statements taken from Decree's deposition.

As to post-termination medical records, UPS pointed to: (1) Dr. Barbara G. Frieman's May 21, 2007 observation that Decree is chronically disabled and cannot perform work with her right dominant arm; (2) Dr. Steven Mandel's June 12, 2007 impression that Decree has a "permanent injury related to the right upper extremity" and observation that Decree does not drive except for short distances; (3) "Quick Response Forms" filled-out by Dr. Korevaar in July and August of 2007 observing that Ms. Decree was temporarily not released to her regular or modified job and that she was totally disabled from employment activities on a temporary basis;[1] (4) a medical opinion that Decree could not temporarily bend to the floor, squat below the chair level, climb more than one flight of stairs, twist to transfer an object, climb a ladder or catwalk, and lift or carry over five pounds; (5) a Liberty Mutual form filled out by Dr. Frieman on September 13, 2007 stating that Decree could return to work provided she was not required to lift, push, or pull with her right arm and that Decree would never "fully" recover; and (6) two physician's at the Coordinated Medical Network's recommendations in February and May of 2008 that Decree not work for an indefinite period. As to Decree's deposition statements, UPS pointed to Decree's admissions that her job required her to (1) drive to locations more than twenty miles from the Marlton Center at least "on occasion" and that her job could require her to drive 250-300 miles in one day; (2) travel by car and plane to attend meetings; and (3) drive to visit customers or follow UPS drivers.

In its previous Opinion, the Court observed that UPS's argument that non-local driving was an essential element of her job as operations manager was particularly strong. Decree, 2009

---

[1] Dr. Korevaar did not fill out the area of the form captioned "Drive/Cannot Drive." (UPS's Br. in Support of Summary Judgment Ex. 21)

WL 3055382, at *12.  For example, the Court acknowledged that Plaintiff's own deposition testimony established that "driving constituted a significant part" of Decree's job.  See id.  Ultimately, the Court was reticent to grant summary judgment, however, for a number of reasons.  First, the centrality of non-local travel to a managerial position was not patently obvious.  C.f. Raspa v. Office of Sheriff of County of Glouchester, 924 A.2d 435, 444 (D.N.J. 2007) (holding that a county jail corrections officer could not perform the essential functions of his job where his disability precluded him from any contact with inmates).  Indeed, of the seventeen essential job functions listed on the UPS document, only one explicitly speaks to travel by automobile.

Second, the frequency with which Decree's position required her to travel non-locally was not entirely clear.  For example, Decree suggested that supervisors (as opposed to managers) were ordinarily tasked with following UPS drivers around on audits, (see Deposition of Kathleen Decree at 121:21-25; 123:24-25), and that managers would often car-pool to off-site meetings, see Decree, 2009 WL 3055382, at *12.

Finally, the Court was concerned that the fact that Decree had performed the job for over a month after her accident and before going on disability supported a reasonable inference that either non-local driving was not an essential element (if Decree did not drive non-locally during that time) or that Decree could perform whatever non-local driving was required (if Decree did, in fact, drive non-locally during that time).  Id.  This concern was amplified by Plaintiff's contention that, limitations notwithstanding, her supervisor tried to pressure her to continue to work.  See id.  Such pressure supports the conclusion that Decree could perform the essential functions of her job with a significantly reduced ability to use her dominant arm.

On its motion for reconsideration, UPS submits that the Court overlooked the following

"facts": (1) Plaintiff regularly drove in excess of her self-imposed local driving restriction; (2) car- pooling was only done for UPS management meetings; (3) Plaintiff's doctor did not order "local driving only" in December 2005; (4) Plaintiff advised UPS that she was not comfortable on major highways; (5) Plaintiff's job could require her to go outside of Marlton every day for a week; (6) within Plaintiff's geographic area of responsibility, all UPS centers but Marlton requires more than twenty miles of round-trip driving and most require major highway travel; (7) Plaintiff was required to drive to drive out a lot to meet drivers and get leads; and (9) Plaintiff had to drive to conduct a lot of training and retraining of drivers.

The Court is not convinced that it overlooked any of these facts. On the contrary, consideration of these facts led to the Court's observation that "Plaintiff's admission that driving constituted a significant part of her job –sometimes requiring her to travel several hundred miles in a day – does come closer to establishing that non-local driving was an essential element of her job." Id. At bottom, however, the undisputed record simply did not paint a robust picture of what it means to be an Operations Manager at a UPS facility. Although driving was clearly a component of this position, the record did not establish conclusively that Plaintiff could not satisfy the driving requirements of her position with or without reasonable accommodation. As a consequence, reconsideration is inappropriate.

### IV.     CONCLUSION

For the reasons expressed above, the Court will deny UPS's motion for reconsideration. An appropriate Order shall issue today.

Dated: 4-19-2010                                        /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge